UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 02-00220-MCS | Date | November 8, 2022 |
|---|---|---|---|
| Title | United States v. Iouri Mikhel | | |

Present: The Honorable   MARK C. SCARSI, U.S. DISTRICT JUDGE

| Stephen Montes Kerr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

Proceedings:                IN CHAMBERS (No Proceedings Held)

At trial, Defendant Iouri Mikhel ("Mikhel") was represented by CJA attorneys Dale Rubin and Richard Callahan.   Following Mikhel's conviction and sentencing, the Court granted counsel's motion to withdraw on April 12, 2007. (Dkt. No. 1764.)   The Office of the Federal Public Defender assumed Mikhel's representation in appellate proceedings and remains appointed for purposes of his 28 U.S.C. § 2255 Motion for Collateral Relief.   (Dkt. Nos. 2098, 2099, 2328, 2329, 2416.)   On October 25, 2022, Mikhel sent the Court correspondence and a pro se document titled "Motion for Appointment of Replacement Counsel (Pro Se by the Defendant)," wherein he asks the Court to "release his current counsel and replace them with attorneys more suited for the requirements of his case."

Because Mikhel is represented by counsel, all communications to the Court shall be presented through his attorney of record. *See* Local Rule 83-2.3.1 (explaining that "[w]henever a party has appeared by an attorney, the party may not thereafter appear or act *pro se*, except upon order made by the Court after notice to such attorney and to any other parties who have appeared in the action."); *Krongkiet v. Beard*, 597 F.App'x 416, 417 (9th Cir. 2015) (holding the district court did not need to entertain a pro se motion while defendant remained represented by counsel); *United States v. Ortiz-Martinez*, 593 F. App'x 649, 650 n.2 (9th Cir. 2015) (denying pro se motions, including a motion for the appointment of new counsel, because "[t]his court. . . does not entertain pro se motions from parties represented by counsel.") Therefore, the documents sent to the Court by Petitioner shall not be filed, but instead shall be forwarded to counsel. *Cf. United States v. Bergman*, 813 F.2d 1027, 1030 (9th Cir. 1987).

Defendant is hereby ordered to cease sending any further documents to the Court, except through his counsel. *See Reberger v. Nevada*, No. 3:13-CV-00071-MMD, 2013 WL 2096499, at *2 (D. Nev. May 14, 2013) (warning that "the Court will not entertain any *pro se* filings from petitioner when he is represented by appointed counsel. Following the appointment of counsel, petitioner may pursue this matter and communicate with the Court only through filings by counsel.") Any further submissions shall be rejected by the Clerk.

In addition to serving this order on counsel of record, the Clerk of Court shall serve a copy of this order on Defendant at Reg. No. 23675-112, United States Penitentiary Terre Haute, P.O. Box 33, Terre Haute, Indiana 47808.

IT IS SO ORDERED.

_____ : _____

Initials of Deputy Clerk   SMO

TRULINCS 23675112 - MIKHEL, IOURI GHERMAN - Unit: THP-X-A

--------------------------------------------------------------------------------

FROM: 23675112
TO:
SUBJECT: Court Clerk
DATE: 10/25/2022 12:49:24 PM

Court Clerks Office
   Central District of California
   Western Division
   Roybal Courthouse
   255 East Temple Street, Suite 180
   Los Angeles, CA 90012-4701

Iouri Mikhel
Reg. 23675-112
Case No: CR 02-00220 MCS
4700 Bureau Road South
Terre Haute, IN 47808

Oct. 25, 2022

Clerk of the Court,

    Please find enclosed a motion, to be filed in my case. Three copies have been provided, for the Court convenience. Case number is already assigned, as indicated. My indigence is long since established, as I have been in prison for 20 years, and had court appointed attorneys since the outset. It would be greatly appreciated if you would get it filed for me.

Thank you in advance for your assistance, and the attention to this matter. Your time is appreciated.
If there are any problems, please do not hesitate to contact me.

Sincerely,

Iouri Mikhel

CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
C. PAMELA GÓMEZ (Bar No. 233848)
(E-Mail: Pamela_Gomez@fd.org)
AJAY V. KUSNOOR (Bar No. 273929)
(E-Mail: Ajay_Kusnoor@fd.org)
LAURA PAUL (Bar No. 329386)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
IOURI MIKHEL

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>IOURI MIKHEL, et al.,<br><br>Defendants. | No. CR 02-00220-MCS<br><br>**DEATH PENALTY CASE**<br><br><br>MOTION FOR APPOINTMENT OF REPLACEMENT COUNCEL (PRO SE BY THE DEFENDANT) |

Comes now the Defendant, Iouri Mikhel, in a Pro Se motion, to respectfully request that the court release his current counsel, and replace them with attorneys more suited to the requirements of his case. Although the Defendant realizes that the timing of his request is not ideal , he firmly believes that such an action is fully warranted, and that the court will agree with his assessment, once it has been made aware of the facts.

1) The attorneys currently appointed do not have sufficient time available to devote to the handling of the case.

_____

In the 4 years in which they have been assigned  to represent Mr. Mikhel, the single most overshadowing feature , which has pervaded all their interactions with him, is that they do not have time. He has been told repeatedly of their heavy case load, of their numerous other clients, of how they cannot get around to the work necessary for his case. Although the Defendant recognizes and respects the fact  that he is not their sole responsibility, the neglect to his case has long since reached the level of absurdity. In spite of the years involved in the case, in spite of the myriad occasions upon which the Defendant has sought to discuss the viable issues for appeal,  not one single member of the current legal team can articulate to him any of the issues they intend to pursue in the pending 22/55 filing.

In point of fact, they do not actually seem to be a "team" at all. There is no cohesion between them , and no communication. None of the attorneys involved can even say who is in charge. With no one in charge, the buck stops nowhere, and serious questions simply go round and round, without ever being answered.  Each person , when spoken to individually, declares that the issue being addressed by the defendant at that moment is the responsibility of another team member. None know what the other is doing, all assert that they "do their own thing, independently". When questioned directly about what their "own thing" might be, all they can offer is the most vague of responses about the issue, with nothing real ever being specified. The net result is that nothing seems to get done, and none are  aware that the others are doing as little as they are. Possibly as a result of "not having time" to work together.

This sort of willful neglect  has been a feature of the Defendants representation from the outset. From 2009 until 2018, the BOP used false pretenses to hold Mr. Mikhel under SAM (Special Administrative Measures) restrictions, which are the most stringent restrictions allowed by law, usually reserved for terror suspects. The defendant was allowed no contact with the outside world at all; not allowed to send or receive letters, not allowed to make phone calls, other than to his counsel, was not allowed to receive visits from his family , or even his embassy. He was not allowed contact with other prisoners. An incredibly loud fan was placed outside his cell, in an attempt to drown out any voices, in case someone should attempt to speak to him. Since he was already isolated on a tier by himself, this did nothing to make the prison "more secure", as was claimed. The only real effect it had was to insure that the Defendant never had one moments peace, and could only sleep when he reached a point of total physical exhaustion. This caused serious deterioration of his physical and mental health.

The implementation of the SAM restrictions for that time period (2009 to 2018) was based on the claim that a hand-drawn map of the housing unit had been discovered in his cell, and was intended for utilization in an escape attempt. (See Exhibit A- Memorandum from Warden. Emphasis added.)  This claim could have been easily refuted, as the "map" had been analyzed by the FBI , and dismissed as nothing more than "doodles". (See Exhibit B- FBI report on Special Administrative Measures. Emphasis added.)

Any competent attorney,  (Or even a fairly inept one) when faced with a client held under such severe conditions as to be detrimental to their health, would ask questions. "Why is my client under such restrictions ?" and "Are the restrictions truly necessary ?" might have been a good place to start. Conditions of confinement which so egregiously violate a defendants rights are ALWAYS an attorneys obligation to address. However, over the period of 9 years, never once did any of the defense team bother to make inquiries. Mr. Mikhel cannot explicate why this was so. It may have been sheer incompetence. It may have been a total lack of interest in his well being. Or possibly they just "did not have time". Although  current counsel were not yet appointed at that time, they have readily continued this alarming trend of doing absolutely nothing.

Any ethical attorney, faced with the inability to meet their clients needs, would remove themselves from the case. The situation is especially exigent in this particular instance, as it is a capital case, and the Defendant will lose his life if the attorneys fail to do their job properly. Yet, for whatever reason, current counsel had stubbornly clung to the case, rather than stepping down, as required by their ethical duties.

The defendant is certainly being prejudiced by the lack of attention afforded his case, and the lack of care for his well-being, which is constitutionally deficient, and does not meet current ABA requirements.  The only viable solution is to remove current counsel, and replace them with a legal team capable of devoting sufficient time to the case.

2) The attorneys currently appointed lack the requisite experience in handling international clients to effectively defend this case.

---

Mr. Mikhel is a Russian citizen, far from home, without family or resources in the United States. As such, he faces difficulties which most criminal defendants do not, including discrimination of all sorts, brought about by the long-standing negative image of Russians held in this country, dating all the way back to the "Red Scare" era and McCarthyism of the 1950's.

One of the key protections against this sort of discrimination and the abuse of rights for any citizen charged with a crime in abroad is to have consular support from their home embassy in the country in which they are imprisoned. It is of paramount importance for any defense team to work closely with the clients embassy, for a myriad or reasons, most of which are obvious even to a first year law student.

In this particular case, the defense team has encountered great difficulties with witness interviews. Many witnesses necessary for Mr. Mikhel's defense and exoneration remain in Russia. Nearly all witnesses who could offer mitigation statements , or give information about the Defendant's background, remain in Russia. But the problems in obtaining interviews are not simply limits to geography, and the language barrier. For some time, due to the Covid Pandemic, no international travel was possible. More recently, travel to Russia has been restricted due to the war in Ukraine, and the sanctions resultant from this conflict.

Any competent attorney in this situation would realize that the solution is to work closely with the Defendants embassy. With personnel and resources on the ground in Russia, consular representatives could easily insure that witnesses were contacted.

Curiously, the defense team has made no attempt to enact this solution. They continually ignore the Defendants pleas , entreaties , and demands that they work with his embassy, and resist contact at all with them, beyond submitting visa applications. Such refusals are the story of this case.

The Defendants history of being on SAM restrictions and being denied consular visitation by the Department of Justice dates back to 2003. But  if the court will  refer again to Exhibit B, it  can be see that consular visitation to Mr. Mikhel was specifically denied by the BOP in  2008. Although this denial violates several international agreements that the United States is part of, and should have been vociferously protested by attorneys, the defense team of that period said nothing. This failure is made even more egregious by the fact that it was based upon the same spurious assertions as the extension on the SAM restrictions for that period, and could easily have been dealt proven false.

To date, the Defendants current representation continues the same, almost antagonistic refusal to engage with the Russian Embassy. Although the U.N. Human Rights Councils "Guidelines for Adequate Consular Assistance" suggest that consular officers visit a  death penalty defendant every 8 to 12 weeks, Mr. Mikhel's defense team has only aided in the arranging a single 30 minute visit, (The defendants first in approximately 7 years.) during which little could be accomplished, due to time constraints.

Although it is possible that the steadfast refusal to utilize resources outside themselves is a result of defense council inexperience and incompetence, another more sinister interpretation of their actions (or lack thereof) could  logically be made. Under the "Guidelines for Adequate Consular Assistance", subsection C, line 80, it states "Consular officers will monitor the detainees legal representation, noting in particular any indication that the lawyer is refusing to engage, is inexperienced or lacks the competence to handle the detainees case, is not devoting the necessary time or effort, or is failing to act on potentially important issues." Since this is an exact litany of defense counsels failings, it is not beyond the real of possibility that their refusal to liaise with the Embassy is based in their fear of oversight by the consul, and the discovery of their inadequacies.

To give the benefit of the doubt, the defendant is willing to ascribe the defense teams refusal to properly establish a working relationship with the Embassy to inexperience, rather than something worse. Even with this lesser of the possible evils, Mr. Mikhel is still being prejudiced by their failures. It renders his defense constitutionally deficient, and unable to meet current ABA requirements. The only viable solution it to remove current counsel, and replace them with a legal team capable of working with consular representatives to meet their clients needs.

3) The attorneys currently appointed to the case have caused a complete breakdown of communication with the defendant.

---

Due to the fact that Mr. Mikhel realizes how rare it is to have new counsel appointed at this stage of the appellate process, he has done his utmost to work with the defense team now on his case. This has proven to be effort in vain, as no method at his disposal have been sufficient to motivate them to simply do their jobs.

As noted before, after 4 years spent on the case, there is not a single issue for appeal reported by the defense team as something they are pursuing. As far as the Defendant can discern, there is no proof that anyone has worked even a single hour on his case. This total lack of action and motivation is not simply restricted to the larger picture of the case. It extends as well into even the simplest of matters.

For some years, the defense team had in their possession family photos, which belonged to Mr. Mikhel. They were not a part of discovery, were unrelated in any way to the case, and thus there was no reason for the attorneys to retain the photos. The sole purpose which they could serve was to provide the Defendant with some comfort in his isolation, so far from his family. The entire defense team agreed the photos were to be sent to him.

Yet is still took countless requests, spread out over a 2 year period, for Mr. Mikhel to actually obtain them. Several times, it was represented to him that the photos were "in the mail", when in fact , they were not. Other times, they were to be mailed "the very next day", and were not. It was only after the Defendant completely refused all contact with the team, due to their constant lying, that they could finally discover the time to begin mailing the photos.

At this point, it has been explained to them on multiple occasions there were specific, yet extremely simple, rules for sending in photos. The Defendant explained these rules in letters, and telephonically, as well as during in-person visitation. The prison counselor explained these rules to the attorneys himself, on at least 2 separate occasions. And once again, it took numerous attempts before the defense team could accomplish even this less than momentous task correctly.

It could be assumed, due to the fact that they were able to obtain degrees in Jurisprudence, that the members of the defense team are not mentally disabled. Therefore, the only conclusion the Defendant can reach, based upon the fact the the attorneys seem incapable of following or retaining even the simplest of instructions, is that they have a complete and total lack of interest in anything pertaining to himself, or his case. This observation has been borne out, time and time again, in the futile discussions in which he has engaged with them. Everything he says is disregarded, and never acted upon. Each conversation is as if it were the first , with all issues as if they were newly brought up, regardless of how many times they have been discussed previously.

Due to their lack of action and effort in the case, and their disregard for anything said by the Defendant, there has been a total breakdown in communication, since August of 2021. Nothing of substance has been discussed with any team member since that time, leaving Mr. Mikhel unable to participate in his own defense, in spite of his sincere attempts to do so.

The inability to communicate with, or be heard by his attorneys, seriously prejudices Mr. Mikhel's case. It renders his defense constitutionally deficient, and unable to meet current ABA requirements for capital cases. As he sees no viable way to reconcile with the attorneys at this point, the Defendant feels his only solution is to remove current council, and replace them with someone willing to actually engage with the Defendant, and meet their clients needs.

Conclusion

---

For the forgoing reasons, considered both individually and collectively, the Defendant has ample grounds to establish that current counsel are not living up to the legally established minimum standards of performance, nor acting in his best interests. Therefore, he has no choice other than to request that the court dismiss said attorneys, and appoint a legal team capable of providing a Constitutionally adequate defense for Mr. Mikhel.

If for any reason the court questions the veracity of the Defendants representations regarding his current legal team, he would respectfully request that an evidentiary hearing be held, to establish the truth of the matter. If this should be the choice of the court, it should be noted that the unit where Mr. Mikhel is currently held contains facilities for hearings by video link, and are well acquainted with such events. In the interest of expedience, the Defendant would waive his right to appear in person, and consent to the hearing being held in such manner.

Respectfully Submitted,

Iouri Mikhel

# EXHIBIT A



**U.S. Department of Justice**

Federal Bureau of Prisons

*Federal Correctional Complex*

---

Office of the Complex Warden                                          *4700 Bureau Road South*
*Terre Haute, Indiana 47802*

October 19, 2016

MEMORANDUM FOR INMATE MIKHEL, IOURI #23675-112

From:        Charles A. Daniels, Complex Warden

Subject:        Notice of Renewed Special Administrative Measures

Pursuant to 28 C.F.R. § 501.3, Special Administrative Measures have been implemented regarding your confinement. The Attorney General authorized implementation of the procedures on June 6, 2003, and delegated the implementation of the procedure to the Director of the Bureau of Prisons. These Special Administrative Measures (SAM) have been implemented based on information concerning your extensive ties with Russian Organized Crime, previous escape attempts, and threats to witnesses. There is a substantial risk your communications or contacts with persons could result in death or serious bodily injury to persons or substantial damage to property that would entail the risk of death or serious bodily injury to persons. The Bureau of Prisons has implemented these measures in the past and is extending them at this time for an additional year period, at the request of the Attorney General's designee. The SAM will commence immediately upon expiration of the prior SAM authorization period and will be in effect for a period of one (1) year, subject to any further direction.

In reaching the conclusion that there is a substantial risk that your communications or contacts could result in death or serious bodily injury to others, the government reports that during a search conducted of your cell in 2009, the BOP discovered a hand-drawn floor plan of the prison tier on which you were being housed. You had previously attempted to escape from custody on two prior occasions, including one attempt that occurred after you had been placed under SAM restrictions. In that instance, in January 2003, you prepared detailed drawings of the facility in which you were incarcerated outlining your escape plan. You then attempted to forward these plans, in violation of the SAM, to a high-ranking member of the Mexican Mafia to whom you were offering one million dollars in return for assistance in facilitating your escape. Your efforts to plot escape from custody and past behavior suggest that you will continue to exploit opportunities to communicate with others outside of the prison system in order to advance your efforts to escape from custody.

Based upon information provided concerning your extensive ties with Russian Organized Crime, your escape attempts, and history of violent behavior, including threats to witnesses, it was found that there is substantial risk that your communications or contacts with persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of serious bodily injury to persons. Therefore, pursuant to 28 C.F.R. § 501.3, the government will continue to implement SAM in order to restrict your access to the mail, the media, the

# EXHIBIT B

10/30/2020                                                                                  Serials

Title: IOURI G. MIKHEL;
USP TERRE HAUTE,
SPECIAL ADMINISTRATIVE MEASURES

Synopsis: To report notebook confiscated from Mikhel, consular
visit that did not occur, and request that case be reassigned.

Administrative: Attached for Indianapolis are emails and
attachments received from the Bureau of Prisons (BOP), detailing
the notebook confiscated from Mikhel, and a copy of the BOP memo
to the Russian Consulate

Details: On January 8, 2009, Correctional Officer (CO)[        ]
[     ] was conducting a routine search of Inmate Mikhel's cell,
when he found an Office Depot legal pad which contained drawings
that the officer thought were diagrams of floorplans. Scanned
images of the drawings were provided to the Terre Haute Resident
Agency (THRA). There was uncertainty among Bureau of Prisons
(BOP) staff as to what the drawings could represent.

                                                                           b6
                                                                           b7C

Writer responded to the prison and spoke with[        ]
[                    ]and[                    ] in the Special
Confinement Unit (SCU). [      ]is[                    ]
[                ]retrieved schematics for the SCU for
comparison, and did not believe that the drawings were accurate
representations of the Unit. After discussing the situation with
[            ]it was determined that Mikhel leads an extremely
solitary life in the SCU, not even leaving his cell for
recreation, and that he does all manner of things to occupy his
time[        ]does not believe that the drawings represent
anything more than doodles, possibly Mikhel's attempt to sketch
the layout of prison areas he has seldom seen. Mikhel remains
extremely secure, isolated from other inmates in the most secure
area of the prison.

                                                                           b6
                                                                           b7C

As the legal pad was taken from Mikhel and the BOP
decided not to return it, they provided it to the FBI. The pad
was entered as evidence item 1B1.

In mid-2008, Mikhel asked that he be visited by a
consular official from his native Russia. The FBI verified that
the official in question, Ivan A. Kiselev, Embassy of the Russian
Federation, 2641 Tunlaw Road NW, Washington, D.C. 20007, was a
member of the cousulate, and would have reason to speak to Mikhel
about his legal situation. The BOP was notified that the
official was genuine, and could contact Mikhel on June 10, 2008.
However, the SAM allows for correspondence between Mikhel and
consular officials, but not contact visits. As such, the BOP
denied the consular visit. A copy of the BOP's notification to
the consulate is attached.

As the writer is being transferred from the
Indianapolis Division at the end of September 2009, it is
requested that this matter be reassigned.

                                                                                          2/3

# CERTIFICATE OF SERVICE

I, Iouri Mikhel, hereby certify that when this motion was filed, I also caused copies of this document to be delivered, via first class mail, to the following persons:

Bram Alden
Assistant United States Attorney
1000 United States Courthouse
312 North Spring Street
Los Angeles , Calif. 90012

Cuathemoc Ortega, et. al.
Federal Public Defenders Office
321 East Second Street
Los Angeles, Calif. 90012

Sean J. Bolser
Federal Capital Appellate Resource Capital Project
One Pierrepont Plaza- 16th Floor
Brooklyn, NY. 11201

Nadhezda Y. Shumova
Consular Division
Embassy of the Russian Federation
2641 Tunlaw Road, N.W.
Washington, DC. 20007

Dated : October 24, 2022

Iouri Mikhel

Iouri G. Mikhel, Reg. No. 23675-112
USP Terre Haute
P.O. Box 33
Terre Haute, IN 47808



9114 9014 9645 1719 9693 51

USPS TRACKING #

UNITED STATES POSTAL SERVICE®

Label 400  Jan. 2013
7690-16-000-7948

LEGAL MAIL



US OFFICIAL MAIL PENALTY FOR PRIVATE USE $300
US POSTAGE PITNEY BOWES
ZIP 47802
02  1V
0004887589
$ 000.00⁰

CLERK, U.S. DISTRICT COURT
RECEIVED
NOV – 1 2022
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

COURT CLERK OFFICE
Central District of California
Western Division
Roybal Courthouse
255 East Temple Street Suite 180
Los Angeles, CA 90012-4701

MCS



